IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICIA ANN GIESE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of Social Security,[1] )<br>)<br>)<br>)<br>Defendant. | Civil Action No. 17-1244 |

**OPINION**
**and**
**ORDER OF COURT**

**SYNOPSIS**

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 13 and 15]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 14 and 16]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Defendant's Motion for Summary Judgment [ECF No. 15] and denying Plaintiff's Motion for Summary Judgment. [ECF No. 13].

**I. BACKGROUND**

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and under Title II of the Social Security Act (the "Act") and for Supplemental Security Income

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

("SSI") under Title XVI of the Act. Plaintiff applied for DIB and SSI on or about August 20, 2013. [ECF No. 8-8 (Exs. 1D, 2D)]. In her applications, she alleged that since June 1, 2012, she had been disabled due to PTSD, depression, and anxiety. [ECF No. 8-9 (Ex. 4E)]. Administrative Law Judge ("ALJ") Douglas Cohen held a hearing on October 29, 2015, at which Plaintiff was represented by counsel. [ECF No. 8-3, at 35-76]. Plaintiff appeared at the hearing and testified on her own behalf. Id. A vocational expert also was present at the hearing and testified. Id. at 69-75. In a decision dated January 13, 2016, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. [ECF No. 8-2, at 15-28]. Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on July 26, 2017, the Appeals Council denied Plaintiff's request for review. [ECF No. 8-2, at 2-5]. Having exhausted all of her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 13 and 15]. The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Determining whether substantial evidence exists is "not merely a quantitative exercise." Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails

to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." Id. The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the

national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

## B. WHETHER THE ALJ ERRED IN CONCLUDING THAT PLAINTIFF'S NEUROPATHY WAS NON-SEVERE

Plaintiff argues that the ALJ erred at step two of the sequential evaluation process in determining that her neuropathy was a non-severe impairment. [ECF No. 14, at 10-13]. This argument is without merit. The step-two inquiry into an impairment's severity "is a *de minimis* screening device to dispose of groundless claims." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). As set forth in the regulations, an impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). The regulations define basic work activities as the abilities or aptitudes necessary to do most jobs, including mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b); 416.921(b). Thus, an impairment is not severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. Newell, 347 F.3d at 546; Mays v. Barnhart, 78 F. App'x

808, 811 (3d Cir. 2003); S.S.R. 85-28. Any doubt as to whether the step-two showing has been made must be resolved in favor of the claimant. Newell, 347 F.3d at 546-47.[2]

At Step Two of his analysis, the ALJ found that Plaintiff had the following severe impairments: back disorder, obesity, migraines, mood/affective disorder, and post-traumatic stress disorder ("PTSD"). [ECF No. 8-2, at 18-20]. The ALJ noted that Plaintiff also reported other impairments including arthritis and neuropathy, but he found that those impairments did not have more than a *de minimis* effect on Plaintiff's ability to perform basic work activities and, therefore, were non-severe. Id. The ALJ supported his analysis of the severity of Plaintiff's neuropathy with substantial evidence, noting, inter alia, that she did not mention neuropathy to her doctor until May 2015; there is no diagnosis of neuropathy in the record; she did not have any testing; she was not prescribed medication; she had not been referred to a specialist; and that medical examination notes and the consultative examination did not support her testimony regarding the degree of her symptoms. Id. (citing Exs. 10F, 16F).

In addition, and in any event, the ALJ did not deny Plaintiff's application for benefits at step two of the analysis. Rather, the ALJ found in Plaintiff's favor at step two when he concluded that Plaintiff's back disorder, obesity, migraines, mood/affective disorder, and PTSD were severe impairments. [ECF No. 8-2 at 18]. The ALJ ruled against Plaintiff at steps four and/or five of the sequential evaluation process, after concluding that her residual functional capacity was sufficient to enable her to perform certain work existing in the economy. Id. at 21-26. Moreover,

---

[2] Although the Court of Appeals for the Third Circuit has commented that the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny, it also has made clear that it does not suggest that a reviewing court apply a more stringent standard of review in such cases. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). Rather, "[t]he Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." Id. at 360-61.

the ALJ expressly considered all of Plaintiff's impairments, including her alleged neuropathy, in making his residual functional capacity determination. See, e.g., id. at 18 (noting that, even when he added handling/fingering limitations to the RFC determination, the vocational expert testified it would not change the available jobs enumerated); 21 (noting that he considered all of Plaintiff's symptoms in determining her RFC); 24 (stating that the limitations in the RFC account for symptoms related to Plaintiff's arthritis and neuropathy). Because the ALJ found in Plaintiff's favor at step two and proceeded with the sequential analysis, even if he had erroneously concluded that her neuropathy was not severe, any such error was harmless. See Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 144-45 & n.2 (3d Cir. 2007) (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005)).

In short, the ALJ's finding that Plaintiff's neuropathy was not severe is supported by substantial evidence and/or any error in this regard was harmless. Accordingly, Plaintiff's Motion for Summary Judgment on this issue is denied.

C. **WHETHER THE ALJ IMPROPERLY DISREGARDED CERTAIN MEDICAL OPINION EVIDENCE**

Plaintiff argues that the ALJ erred in assigning little weight to the opinions of her chiropractor, Charles Simkovich, and consultative examiner, Rosalinda Raymundo, M.D., that Plaintiff would need to lie down for two hours and could only stand for two hours in an eight-hour workday, that she would not be able to lift more than five or ten pounds, that she would have difficulty with repetitive use of her hands, and that she would need to miss work due to her medical conditions. [ECF No. 14, at 13-16]. After careful consideration, I disagree.

The amount of weight accorded to medical opinions is well-established. Generally, the opinions of a claimant's treating physicians are entitled to substantial and, at times, even controlling weight. 20 C.F.R. §§ 404.1527, 416.927(c)(1). To be entitled to controlling weight,

however, the treating physician's opinion must be well supported by medical techniques and consistent with the other substantial evidence of record. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001). To determine the weight of a treating physician's opinion, the ALJ may consider a number of factors, including consistency, length of treatment, corroborating evidence, and supportability. 20 C.F.R. §§ 404.1527, 416.927(c)(1). As the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Soc. Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505 (3d Cir. 2009).

Here, Plaintiff was treated by chiropractor Charles Simkovich. On or about October 19, 2015, chiropractor Simkovich completed a three-page physical capacity evaluation in which he opined, inter alia, that Plaintiff would have to lie down for a total of two hours and could only stand for two hours during an eight-hour workday; that she could only lift up to five pounds; that she would have difficulty using her hands for repetitive pushing, pulling, and fine manipulation; and that she would need to miss 6-8 days per month of work due to her medical conditions. [ECF No. 8-31, Ex. 27F]. As Plaintiff acknowledges and quotes in her brief, the ALJ considered Simkovich's opinions and gave them little weight. [ECF No. 14, at 14 (quoting ECF No. 8-2 at

7

25)]. Specifically, the ALJ noted that Simkovich was not an acceptable medical source who could render a medical opinion under the regulations; that Simkovich never did any imaging studies; that the imaging studies done by Plaintiff's medical doctors were mostly unremarkable; and that Simkovich included many limitations unrelated to Plaintiff's back condition and, therefore, beyond his expertise. [ECF No. 8-2, at 25].

Contrary to Plaintiff's assertions, these are valid and acceptable reasons for discounting opinion evidence. See 20 C.F.R. §§ 404.1527; 416.927. Although Plaintiff urges that the treating physician rule should govern, under then-applicable regulations,[3] a chiropractor is not "an acceptable medical source" in assessing a claimant's disability but, rather, is considered an "other source." S.S.R. 06-03p. As such, as the ALJ correctly noted, a chiropractor cannot give medical opinions and cannot be considered a treating source whose opinions may be entitled to controlling weight. Id.; see also Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361-62 (3d Cir. 2011); Hartranft v. Apfel, 181 F.3d 358, 361 (3d Cir. 1999); 20 C.F.R. §§ 404.1502; 416.902; 404.1527(a); 416.927(a). Social Security Ruling 06-03p, however, provides that an ALJ will consider evidence from such "other sources" in determining whether a disability exists because such sources may provide insight into the severity of the impairment and the ability of the individual to function. As such, the ALJ should weigh this evidence with the rest of the evidence using the same factors, including: how long the source has known, and how frequently the source has seen, the individual; how consistent the opinion is with the other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's

---

[3] Although the regulations governing the evaluation of medical evidence were recently amended (and S.S.R. 06-03p concomitantly rescinded), the new version effective March 27, 2017, does not apply to the present claim. See 20 C.F.R. §§ 404.1527, 416.927 (2017); 20 C.F.R. §§ 404.1520c, 416.920c (2017).

impairment; and any other factor that tends to support or refute the opinion.  Id.  After careful review, I find that the ALJ properly evaluated Chiropractor Simkovich's opinion using appropriate factors as set forth in the regulations and that substantial evidence of record supports the ALJ's weighing of Simkovich's opinion.  See ECF No. 8-2 at 25 (citing, inter alia, Exs. 9F, 12F, 15F, 16F, and 27F).[4]

I likewise find that the ALJ properly weighed the opinion of Dr. Raymundo.  [ECF No. 8-2, at 25].  Dr. Raymundo examined Plaintiff at her counsel's request in or around June 2015.  [ECF No. 8-32 (Exs. 29F, 30F)].  Dr. Raymundo completed a Physical Capacity Evaluation Form dated July 22, 2015, in which she opined, inter alia, that Plaintiff could stand or walk continuously for 10 minutes per hour in an eight-hour day and could sit continuously for 30 minutes per hour in an eight-hour day.  Id. (Ex. 29F).  She further indicated that, in an eight-hour day, Plaintiff could sit for a total of four hours and stand for a total of two hours, with normal breaks; and could sit

---

[4] Plaintiff's factual disagreements with the ALJ's analysis are unpersuasive.  [ECF No. 14, at 14-16].  For example, Plaintiff takes issue with the ALJ's statement that Simkovich never did any imaging studies, citing records indicating that Simkovich took x-rays of Plaintiff's spine in July 2000 and June 2005.  Id. at 15 (citing R. 943, 1021 (Exs. 20F, 21F)).  The records to which Plaintiff cites however, are merely line entries in a pages-long list of dates of testing/treatment.  See ECF Nos. 8-25, 8-26 (Exs. 20F, 21F).  Plaintiff does not cite to copies of the alleged imaging studies or to medical notes or records describing the contents of the same.  Moreover, the alleged x-rays pre-date Plaintiff's alleged disability onset date by 7-12 years.  Plaintiff's disagreement with the ALJ's description of other imaging studies as "mostly unremarkable" also is unpersuasive.  Contrary to Plaintiff's suggestion, the ALJ did not dismiss the imaging studies entirely, and, throughout his opinion, expressly acknowledged that the studies showed mild scoliosis and degenerative changes, including some degenerative disc space narrowing.  See ECF No. 8-2 at 22-25 (citing Exs. 9F, 1-2; 12F, 1; 16F, 105, 107).  Indeed, the ALJ cited these studies as evidence that Plaintiff had greater physical limitations than those opined by treating physician, Walter Hoover, M.D., and by the state agency medical consultant.  See id. at 24-25 (citing Exs. 3A, 4A, 8F).  The ALJ found, however, that the studies were otherwise unremarkable and did not support the extreme degree of limitation contained in chiropractor Simkovich's opinion.  Id. at 22, 25.  The ALJ likewise did not ignore the fact that Plaintiff treated frequently with Simkovich over the years.  He correctly noted, however, that most of these visits occurred prior to the alleged disability onset date and that, after the alleged onset date, Plaintiff visited Simkovich only a few times, with all of those visits occurring in 2015.  Id. at 22 (citing Exs. 20F-26F).  Again, the standard is whether substantial evidence supports the ALJ's findings, not whether there is evidence to establish Plaintiff's alternative position.  See Hundley v. Colvin, Civil Action No. 16-153, 2016 WL 6647913, at *2 (W.D. Pa. Nov. 10, 2016).

and stand for six total hours if she could alternate sitting and standing at will. Id. Dr. Raymundo also opined that Plaintiff would have to lie down for a total of two hours per eight-hour work day, that she could lift up to 5-10 pounds, and that she could not use her hands for repetitive pushing and pulling and could not use her feet for repetitive movements. Id. Dr. Raymundo checked off that Plaintiff could occasionally bend, balance, kneel, crawl, reach, push, and pull; and could never climb, stoop, or kneel. Id. The ALJ gave little weight to Dr. Raymundo's opinions because her examination documented virtually no objective findings, and Dr. Raymundo herself stated in the report that she found no significant findings upon examination to explain all of Plaintiff's symptoms and that the limits were subjective. [ECF No. 8-2, at 25 (citing Exs. 29F, 30F)]. The ALJ's assessment of Dr. Raymundo's report is accurate, and his stated reasons for discounting her opinion are appropriate.[5] Therefore, I find no error in this regard.[6]

D. **WHETHER THE ALJ IMPROPERLY DETERMINED PLAINTIFF'S RFC**

Plaintiff takes issue with the ALJ's RFC finding, arguing that there is substantial evidence that Plaintiff is unable to physically or mentally do the work noted in that finding. [ECF No. 14, at 16-17]. In particular, Plaintiff cites the reports of Chiropractor Simkovich and Dr. Raymundo and states that the RFC does not account for Plaintiff's alleged need to lie down for two hours in an eight-hour workday or her limitation to standing for a total of two hours in an eight-hour workday and lifting no more than ten pounds. Id. at 17. Plaintiff asserts that these restrictions limit

---

[5] Elsewhere in his opinion, the ALJ further noted that, after examining Plaintiff, Dr. Raymundo concluded that Plaintiff was not physically disabled but had a lot of limiting complaints. The ALJ also pointed out that Plaintiff reported to Dr. Raymundo that she cares for her wheelchair-bound fiancé as well as her teenage autistic son. See ECF No. 8-2 at 22 (citing Ex. 30F).

[6] With the exception of a reference to the treating physician doctrine, Plaintiff does not make any specific arguments as to the ALJ's evaluation of Dr. Raymundo's report. [ECF No. 14 at 13-16]. Dr. Raymundo, however, was a one-time consultative examiner, not a treating physician. Even if she were a treating physician, substantial evidence supports the ALJ's decision to afford her opinion little weight.

Plaintiff to less than sedentary work.  Id.  This argument is without merit.

As an initial matter, the applicable standard is not whether there is evidence to establish Plaintiff's position, but, rather, whether there is substantial evidence to support the ALJ's finding. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989).  Thus, Plaintiff's argument that substantial evidence supports her position is misplaced.  Moreover, as previously discussed, the ALJ appropriately addressed the opinions of Simkovich and Raymundo (and all other medical opinions of record) and weighed them properly.  Substantial evidence supports his findings, and he committed no error by declining to include greater limitations in his RFC determination.[7]

Ultimately, the responsibility for determining a claimant's RFC rests with the ALJ.  20 C.F.R. §§ 404.1527(d); 404.1546; 416:927(d); 416.946; Chandler, 667 F.3d at 361.  Here, the ALJ did not discount Plaintiff's symptoms entirely and included restrictions in his RFC finding related to Plaintiff's credibly-established impairments, including a limitation to light work with the following additional limitations: occasional climbing of ramps or stairs; occasional balancing, stooping, crouching, crawling, or kneeling; must avoid concentrated exposure to dust, fumes, odors, gases, environments with poor ventilation, wetness, humidity, or temperature extremes; simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and, in general, relatively few workplace changes; and occupations not involving high levels of stress, i.e., those requiring independent decision-making, or occupations subject to close supervision or close interaction with co-workers or the general public, with close meaning no more than occasional.  [ECF No. 8-2, at 21].  As set forth above,

---

[7] In addition to his evaluation of the medical opinion evidence, the ALJ specifically discussed Plaintiff's alleged limitations on standing, lifting, the use of her hands, and the need to lie down and concluded that those limitations were inconsistent with the record evidence and/or incorporated into the RFC finding.  See, e.g., ECF No. 8-2, at 21-26 (citing, e.g., Exs. 3A, 4A, 5F, 8F, 9F, 10F, 12F, 13F, 16F, 17F, 20F-26F, 30F, as well as Plaintiff's testimony and her own admitted activities of daily living and treatment history).

the ALJ supported this RFC finding with substantial evidence, including, inter alia, Plaintiff's treatment records; x-ray results; medical opinion evidence; medication history; and activities of daily living.  See id. at 21-26 (citing, inter alia, Exs. 3A, 4A, 2F, 4F, 5F, 8F, 9F, 10F, 11F, 12F, 13F, 16F, 17F, 20F-26F, 28F, 30F and Hearing Testimony).

Because the ALJ's RFC generously accounted for the limitations established by the evidence of record, and his findings are supported by substantial evidence, I find that the ALJ did not err in formulating Plaintiff's RFC.   Accordingly, there is no basis for remand on this issue.

### E. **WHETHER THE ALJ IMPROPERLY DISREGARDED THE VE TESTIMONY AND RELIED ON AN INCOMPLETE HYPOTHETICAL QUESTION**

Plaintiff argues that the ALJ improperly disregarded the testimony of the VE that, to keep a job, an individual would, at most, be able to lie down during breaks which would be for a maximum of one hour per day, and would not be able to miss more than one day of work per month.  [ECF No. 14, at 18].   Plaintiff further claims the ALJ ignored the VE's testimony that the jobs the ALJ found Plaintiff could perform require frequent fingering and handling which is up to two-thirds of the workday.   Id. (citing ECF No. 8-3 at 74-75).   I disagree.

It is well-settled that the law only requires the ALJ to include limitations supported by the record in his hypothetical question to the vocational expert.  Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).   Here, the substantial evidence cited above shows that the hypothetical questions the ALJ adopted accurately reflected Plaintiff's impairments.   See ECF Nos. 8-2, at 21, 28; 8-3, at 72-73. Plaintiff's argument that the ALJ improperly evaluated the severity of her impairments and erred in failing to include certain limitations in the RFC finding are without merit.  Although the VE testified that Plaintiff would not be able to perform any work if she were off task more than ten percent of the workday, were required to lie down more than one hour per workday, or consistently

missed more than one day a month of work, ECF No. 8-3 at 73-75, substantial evidence supports the ALJ's finding that Plaintiff's impairments would not, in fact, cause her to be off task or miss work to this degree.[8]

Because the ALJ properly considered Plaintiff's limitations supported by the record, and the hypothetical questions on which the ALJ relied accurately reflected those limitations, I find no error on this issue.

F. **WHETHER THE ALJ PROPERLY EVALUATED PLAINTIFF'S PAIN COMPLAINTS**

In two cursory paragraphs, Plaintiff contends that the ALJ failed to show a rational basis for discounting Plaintiff's subjective complaints of pain and that the evidence supports those complaints. [ECF No. 14, at 18-19]. In addition to being conclusory, Plaintiff's argument lacks substantive merit.

Pursuant to the regulations applicable at the time of the ALJ's decision, the Commissioner must consider all "symptoms, including pain," in the disability determination. Statements of pain alone, however, are not enough to establish a disability; the claimant must also present objective medical evidence to show that the medical impairment "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a); 416.929(a); S.S.R. 96-7p.[9]

---

[8] Plaintiff's concern that the positions identified by the VE may require frequent fingering and handling (up to 2/3 of the workday) is without moment. The VE testified that a restriction to no more than frequent handling or fingering would not eliminate the jobs he identified, and substantial evidence supports the ALJ's conclusion that Plaintiff had no greater limitations related to handling or fingering. See ECF No. 8-2, at 24-26 (citing, e.g., Exs. 5F, 8F, 10F, 13F, 16F).

[9] Social Security Ruling 16-3p, effective March 28, 2016, rescinded and superseded Ruling 96-7p. In this case, however, Ruling 96-7p applies because the ALJ's opinion predates Ruling 16-3p's March 28, 2016 effective date. See 82 Fed. Reg. 49462-03 (clarifying that SSA adjudicators will apply Ruling 16-3p when making determinations and decisions after March 28, 2016). Although the two rulings do not materially differ in substance, Ruling 16-3p eliminates the use of the term "credibility" and clarifies that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p.

Once the Commissioner has determined from the "medical signs or laboratory findings" that the claimant has an impairment which could reasonably produce the pain, the Commissioner must evaluate the intensity, persistence, and limiting effects of the Plaintiff's symptoms to determine how the pain limits the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c)(1); 416.929(c)(1); S.S.R. 96-7p. In determining the limits on the claimant's capacity for work, the Commissioner will consider the entire case record, including evidence from the treating, examining and consulting physicians, observations from agency employees, and other factors such as the claimant's daily activities, descriptions of the pain, precipitating and aggravating factors, type, dosage, effectiveness, and side effects of medications, treatment other than medication, and other measures used to relieve the pain. 20 C.F.R. §§ 404.1529(c); 416.929(c); S.S.R. 96-7p. The Commissioner also will look at inconsistencies between the claimant's statements and the evidence presented. 20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible. See Burns v. Barnhart, 312 F.3d 113, 129–30 (3d Cir. 2002). Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence he rejects and the reasons for discrediting such evidence. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000). Ordinarily, an ALJ's credibility determination is entitled to great deference. See Zirnsak v. Colvin, 777 F.3d 607, 612 (3d Cir. 2014); Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003).

Plaintiff's assertion that the ALJ improperly discounted her pain complaints is incorrect. To the contrary, the ALJ considered Plaintiff's complaints of pain in accordance with the regulations and properly concluded that those complaints were not fully credible and did not limit plaintiff's ability to perform light work. [ECF No. 8-2, at 21-26]. The ALJ directly addressed

Plaintiff's allegations that her impairments caused severe pain and did not reject her allegations entirely. Rather, the ALJ incorporated numerous limitations related to Plaintiff's pain complaints in his RFC finding. See id. at 21 (RFC finding containing limitations on, inter alia, balancing, stooping, climbing, kneeling, crouching, and crawling). The ALJ thoroughly analyzed the medical evidence, including Plaintiff's medication and treatment history, citing numerous records that were inconsistent with a finding of totally disabling pain. See id. at 21-26 and medical records cited therein. The ALJ also discussed the fact that Plaintiff's self-reported activities of daily living were inconsistent with an individual experiencing totally debilitating symptomology. Id. at 24. For example, Plaintiff reported that she was able to clean the house, cook, crochet, home-school her autistic son, and provide transportation for her daughter. See id.

For all of these reasons, I find that substantial evidence supports the ALJ's ruling and his rejection of parts of Plaintiff's testimony as not fully credible. See Burns, 312 F.3d at 130.

### III. CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PATRICIA ANN GIESE,  )
 )
        Plaintiff,  )
 )
   vs.  )   Civil Action No.   17-1244
 )
NANCY A. BERRYHILL, Acting  )
Commissioner of Social Security,[1]  )
 )
 )
        Defendant.  )

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 29th day of January, 2019, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered the decision of the ALJ is affirmed and Plaintiff's Motion for Summary Judgment [ECF No. 13] is DENIED and Defendant's Motion for Summary Judgment [ECF No. 15] is GRANTED.

                             BY THE COURT:

                             /s/ Donetta W. Ambrose
                             Donetta W. Ambrose
                             U.S. Senior District Judge

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).